IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KYLE DILLON, §
TDCJ #1268995, §
 §
    Plaintiff, §
 §
v. § CIVIL ACTION NO. H-17-0577
 §
SERGEANT CHRISTOPHER E. LITTLE, §
 §
    Defendant. §

## MEMORANDUM OPINION AND ORDER

Plaintiff Kyle Dillon has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that Sergeant Christopher E. Little used excessive force and filed a false disciplinary case against him during his confinement in the Texas Department of Criminal Justice ("TDCJ"). Pending before the court is Defendant Little's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 36) and Brief in Support (Docket Entry No. 37). Dillon has filed responses to Defendant's MSJ (Docket Entry Nos. 38, 39, 53) and he has filed a motion for summary judgment (Docket Entry No. 52), to which Defendant Little has replied (Docket Entry No. 53). Little has also filed a motion to amend his Brief in Support (Docket Entry No. 55). Dillon has filed several other motions requesting discovery

(Docket Entry Nos. 35, 42), judgment as a matter of law (Docket Entry No. 44), a default judgment (Docket Entry No. 47), and sanctions against the defendant (Docket Entry No. 49). After considering the pleadings, the exhibits, and the applicable law, the court will grant the Defendant's MSJ and will dismiss this case for the reasons explained below.

## I. Background

The incident that forms the basis of the Complaint occurred at the Ferguson Unit, where Dillon remains incarcerated.[1] Dillon contends that he was confined in administrative segregation on November 1, 2016, when he asked to see a mental health provider because he was upset about a use of force that had occurred the previous day, involving other officers.[2] Dillon claims that Sergeant Little responded to the request by spraying an entire can of chemical agent into his cell for no reason.[3] Dillon contends that Sergeant Little then filed false disciplinary charges against him for creating a disturbance and failing or refusing to obey

---

[1]Complaint, Docket Entry No. 1, p. 3. For purposes of identification, all page numbers refer to the pagination inserted by the court's electronic filing system, CM/ECF.

[2]More Definite Statement, Docket Entry No. 7, pp. 1-2. The use of force that Dillon references, which occurred on October 31, 2016, is the subject of a separate lawsuit pending in this district. See Dillon v. Moore, et al., Civil No. H-17-204 (S.D. Tex.).

[3]More Definite Statement, Docket Entry No. 7, pp. 1-2.

orders.⁴ Dillon contends that Sergeant Little used excessive force against him in violation of the Eighth Amendment and denied him due process when he committed "aggravated perjury" at his disciplinary proceeding.⁵ Dillon seeks compensatory and punitive damages under 42 U.S.C. § 1983 for the violation of his constitutional rights.⁶

Sergeant Little moves for summary judgment, arguing that Dillon cannot establish a constitutional violation.⁷ In support of that argument, Little has provided an administrative report regarding the use of force (the "Use of Force Report").⁸ According to the Use of Force Report, Sergeant Little observed Dillon during a security check "with a broken razor blade stating he was going to hurt himself."⁹ Little twice ordered Dillon to drop the razor blade, but Dillon refused.¹⁰ After Dillon refused a third order to drop the razor blade, Little administered 3.5 ounces of chemical agent into the cell.¹¹ Dillon then dropped the razor blade.¹²

Sergeant Little has provided a copy of the TDCJ Use of Force Plan, which contains specific guidelines for those "occasions

---

⁴Id. at 2.

⁵Complaint, Docket Entry No. 1, p. 4.

⁶Id.

⁷Defendant's MSJ, Docket Entry No. 36, p. 2; Defendant's Brief in Support, Docket Entry No. 37, pp. 5-13.

⁸Use of Force Report, Docket Entry No. 37-1, pp. 2-13.

⁹Id. at 8.

¹⁰Id.

¹¹Id.

¹²Id.

within a correctional setting when it becomes necessary for staff to use force in order to achieve the compliance of an offender or to maintain a safe and secure environment for offenders and staff."[13] Sergeant Little states that he believed that Dillon "was sincere and serious about harming himself, and he was physically capable of harming himself, and had a broken razor blade that would allow him to a carry out his threat."[14] Based on his experience and training pursuant to the TDCJ Use of Force Plan, Little determined that "in the immediate circumstances, dispensing non-lethal gas was an appropriate means" to gain Dillon's compliance with his orders to drop the razor blade while avoiding the possibility of serious injury to Dillon or staff.[15]

Records of the administrative investigation reflect that Dillon was taken to the infirmary immediately after the use of chemical spray and decontaminated with "copious amounts of air and water."[16] While in the clinic Dillon stated that he was suicidal and that he had a razor.[17] A nurse examined Dillon and determined that he sustained no injury as a result of the use of chemical

---

[13] TDCJ Use of Force Plan, Docket Entry No. 37-4, p. 5.
[14] Affidavit of Christopher E. Little. Docket Entry No. 37-3, p. 4.
[15] Id. at 5.
[16] Use of Force Report, Docket Entry No. 37-1, pp. 5, 7.
[17] Id. at 9 (Witness Statement of Captain Tom Smith).

agent.[18] Officials who investigated the incident determined that the chemical agent was used in a manner consistent with the Use of Force Plan to "gain compliance" with Sergeant Little's orders and "to preserve life" because Dillon was attempting to harm himself.[19]

Disciplinary records show that Dillon was charged with failing to obey a direct order and creating a disturbance that significantly disrupted unit operations in TDCJ Disciplinary Case No. 20170078768.[20] After hearing testimony from Dillon and Sergeant Little, the disciplinary hearing officer found Dillon guilty as charged of failing to obey a direct order.[21] As a result of that conviction, Dillon's commissary privileges were curtailed for 12 days, he was restricted to his cell for 15 days, and his classification status was allowed to remain at Line 3.[22]

## II. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there

---

[18]Id. at 10-11.

[19]Use of Force Report, Docket Entry No. 37-1, pp. 3, 4.

[20]TDCJ Offense Report, Docket Entry No. 37-2, p. 9.

[21]See TDCJ Disciplinary Hearing Report and Record, Docket Entry No. 17-3, p. 7, and Docket Entry No. 37-2, p. 3 (containing copies of the same exhibit, which are barely legible).

[22]See id.

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted). However, the non-movant "cannot rest on [his] pleadings" where qualified immunity is asserted. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in original). Nor can the non-movant avoid summary judgment simply by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates an "absence of evidentiary

support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The plaintiff proceeds pro se in this case. Courts construe pleadings filed by pro se litigants under a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)). Nevertheless, "pro se parties must still brief the issues and reasonably comply with [federal procedural rules]." Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995)(citations omitted). The Fifth Circuit has held that "[t]he notice afforded by the Rules of Civil Procedure and the local rules" is "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. Martin v. Harrison County Jail, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam).

### III. Discussion

#### A. Qualified Immunity

Sergeant Little argues that Dillon fails to show that excessive force was used in violation of the Eighth Amendment to

-7-

the United States Constitution or that a due process violation occurred in connection with his disciplinary proceeding.[23] Arguing further that Dillon fails to establish that any constitutional violation occurred, Little moves for summary judgment on the grounds that he is entitled to qualified immunity from all of the claims against him.[24]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982)). This is an "exacting standard," City & County of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015), that "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986)). A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).

---

[23]Defendant's MSJ, Docket Entry No. 36, pp. 1-2.
[24]Id.

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." Id. at 654 (quoting Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" Id. (quoting Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)).

## B. Claims of Excessive Force Under the Eighth Amendment

Little points to the Use of Force Report and argues that Dillon cannot satisfy the first prong of the qualified immunity analysis because he cannot show that excessive force was used in violation of the Constitution.[25] Claims of excessive use of force in the prison context are governed by the Eighth Amendment, which prohibits cruel and unusual punishment, i.e., the "unnecessary and wanton infliction of pain." Wilson v. Seiter, 111 S. Ct. 2321, 2323

---

[25]Brief in Support, Docket Entry No. 37, pp. 5-6.

(1991) (quoting Estelle v. Gamble, 97 S. Ct. 285, 291 (1976)). Not every malevolent touch by a prison guard gives rise to a constitutional violation under the Eighth Amendment. See Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). The Constitution excludes from recognition de minimis uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" Hudson, 112 S. Ct. at 1000 (citation and quotation omitted).

To prevail on an excessive-use-of-force claim under the Eighth Amendment a plaintiff must establish that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm." Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing Hudson, 112 S. Ct. at 998). Relevant factors to consider in evaluating an excessive-use-of-force claim include: (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. See Hudson, 112 S. Ct. at 999; Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999).

Addressing the above-referenced factors from Hudson v.

McMillian, Little states that non-lethal force in the form of a chemical agent was deployed only after Dillon failed to comply with multiple orders to drop a razor blade that he had been holding while threatening to hurt himself.[26] Little argues that the amount of force used was tempered by his effort to verbally reason with Dillon during the encounter and was necessary only because of Dillon's behavior, which Little reasonably perceived as a threat both to Dillon's safety and the safety of other staff who might be called upon to enter the cell and intervene.[27] Little adds that the force used was proportionate to the need to gain Dillon's compliance with repeated orders and to resolve a potentially deadly situation.[28] Little also argues that Dillon's claim must fail because the record shows that he suffered no injury and required no medical treatment as a result of the incident.[29] This factor is dispositive for reasons outlined below.

Dillon, who notes that the razor blade he was allegedly holding was not recovered by officers after the incident or admitted into evidence during his disciplinary proceeding, disputes that he posed a danger staff because he was "secure in his cell"

---

[26]Brief in Support, Docket Entry No. 37, pp. 8-9.
[27]See id. at 9.
[28]See id.
[29]See id.

when the chemical agent was deployed.[30] Dillon alleges that he suffered "intense pain and severe burning that took days to fully subside" after being exposed to a chemical agent on November 1, 2016.[31] However, Dillon does not present any evidence in support of these allegations.[32] Without evidence showing that he suffered an injury that was more than de minimis, Dillon cannot establish an excessive force claim or a violation of the Eighth Amendment. See, e.g., Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (holding that a sore, bruised ear lasting for three days was de minimis and would not support an excessive force claim); Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993) (per curiam) (concluding that where the prisoner suffered no injury, the use of physical force was de minimis and was not repugnant to the

---

[30]Id. at 1, 2.

[31]Declaration Opposing Summary Judgment, Docket Entry No. 38, p. 2.

[32]Dillon has requested discovery of Sergeant Little's disciplinary records, grievance records, and records involving any other use of force involving Little. See Motion for Additional Disclosure, Docket Entry No. 35, p. 1. Dillon has also requested additional discovery regarding the potential effects of being subjected to a chemical agent and any video that may have accompanied the use of force. See Discovery Request, Docket Entry No. 42, p. 1. However, Dillon does not allege specific facts showing how this additional information would raise a fact issue. His conclusory request is not sufficient to warrant a continuance under Fed. R. Civ. P. 56(d)(2). See Stearns Airport Equip. Co. v. FMC Corp., 170 F.3d 518, 534 (5th Cir. 1999) (observing that it is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts'") (quoting Washington v. Allstate Ins. Co., 901 F.2d 1281, 1285 (5th Cir. 1990) (citation omitted)). Accordingly, Dillon's requests for discovery will be denied.

conscience of mankind). To the extent that Dillon suffered any mental or emotional injuries,[33] he cannot recover monetary damages in the absence of a physical injury. See 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . .").

Dillon does not raise a genuine issue of material fact regarding the extent of his injury or any of the other Hudson factors. In that regard, the record shows that Sergeant Little deployed a limited quantity of chemical agent because he believed that Dillon had a razor blade in his possession and was threatening to harm himself, but refused to obey repeated orders to drop the razor blade.[34] Little's account is supported by a witness (Captain Tom Smith) who heard Dillon admit that he had a razor blade and was suicidal shortly after the incident occurred.[35] Use of a chemical agent in limited quantities to gain compliance is considered an appropriate response where an inmate refuses to obey repeated orders. See Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984) ("If it is an order that requires action by the institution, and

---

[33]More Definite Statement, Docket Entry No. 20, p. 4 (referencing emotional injuries including loss of sleep, nightmares, fear, and depression).

[34]Affidavit of Christopher E. Little. Docket Entry No. 37-3, p. 4.

[35]Use of Force Report, Docket Entry No. 37-1, p. 9.

the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force."); see also Bailey v. Turner, 736 F.2d 963, 970 (4th Cir. 1984) (concluding that "the use of mace on an unruly or 'recalcitrant' prison inmate, though confined in his cell, is not plainly per se unconstitutional" as cruel and unusual punishment).

The record does not contain admissible evidence to support Dillon's allegations or that would tend to show that Sergeant Little violated clearly established law under the Eighth Amendment by deploying a chemical agent in a manner that was cruel and unusual, instead of a good-faith effort to maintain order or restore discipline following Dillon's repeated refusal to obey orders. Therefore, Dillon has not established a constitutional violation or overcome Little's entitlement to qualified immunity from the claims against him under the Eighth Amendment. Because Dillon has not raised a genuine issue for trial, Defendant's MSJ on this issue will be granted.

### C. Due Process Claims in the Prison Disciplinary Context

Dillon contends that Sergeant Little also violated his right to Due Process under the Fourteenth Amendment by filing false disciplinary charges against him for failing to obey an order. An inmate's rights in the prison disciplinary setting are governed by the Due Process Clause of the Fourteenth Amendment to the United

States Constitution. See Wolff v. McDonnell, 94 S. Ct. 2963, 2974-75 (1974). Prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. See Sandin v. Conner, 115 S. Ct. 2293, 2302 (1995). A Texas prisoner cannot demonstrate a Due Process violation in the prison disciplinary context without first showing that (1) he was eligible for early release on the form of parole known as mandatory supervision; and (2) the disciplinary conviction at issue resulted in a loss of previously earned good-time credit. See Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000).

The record confirms that Dillon did not lose any good-time credits as a result of the challenged disciplinary conviction. The only punishment assessed against Dillon was a temporary loss of commissary privileges, confinement to his cell for 15 days, and a determination that Dillon would remain at Line 3 for purposes of classification status.[36] Sanctions such as these do not affect the duration of a Texas prisoner's sentence or impose an "atypical, significant deprivation" that is protected by a liberty interest. Sandin, 115 S. Ct. at 2301. The punishment imposed in Dillon's case, therefore, does not implicate due process concerns. Madison

---

[36] See TDCJ Disciplinary Hearing Report and Record, Docket Entry No. 17-3, p. 7.

v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (imposing 30 days commissary restriction and 30 days of cell restriction as disciplinary punishment did not implicate due process concerns); Malchi, 211 F.3d at 958-59 (reduction in classification or good-time-earning status does not impact the duration of a Texas prisoner's confinement in a way that implicates a liberty interest protected by the Due Process Clause). Because Dillon cannot establish a due process violation under these circumstances, he cannot state a valid claim for relief under 42 U.S.C. § 1983.

Alternatively, Dillon does not otherwise show that he was denied due process in connection with his disciplinary conviction. Prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Wolff, 94 S. Ct. at 2977. In this setting, the minimum amount of procedural due process is generally limited to:

(1) advance written notice of the disciplinary charges;

(2) an opportunity to call witnesses and present documentary evidence (when the presentation is not unduly hazardous to institutional safety and correctional goals); and

(3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action.

See id. at 2978-80. In addition, there must be "some evidence to support the findings made in the disciplinary hearing." Superintendent, Mass. Correctional Institution v. Hill, 105 S. Ct. 2768, 2775 (1985). If these criteria are met a prisoner cannot

show that he was punished without due process.

Dillon does not claim that he lacked adequate notice of the charges against him. The record shows that Dillon was represented at the disciplinary hearing by a counsel substitute who was appointed to assist him.[37] Dillon does not claim that he lacked an opportunity to testify or evidence on his own behalf. Likewise, the record also shows that Dillon received a written statement from the disciplinary hearing officer about the evidence relied upon, namely, Sergeant Little's testimony and written offense report.[38]

Dillon, who denied having a razor blade or disobeying orders,[39] contends that Sergeant Little's report was false because no razor blade was admitted into evidence at the disciplinary hearing.[40] The record shows, however, that the disciplinary hearing officer considered testimony from both Dillon and Sergeant Little, and decided to believe Sergeant Little.[41] A charging officer's report and testimony is sufficient evidence to sustain a disciplinary conviction for purposes of the Due Process Clause. See Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001) (finding that the

---

[37]TDCJ Disciplinary Hearing Report and Record, Docket Entry No. 37-2, p. 3; TDCJ Investigation Worksheet, Docket Entry No. 37-2 pp. 7-8 (detailing counsel substitute's investigation and Dillon's statement about the charged offense).

[38]TDCJ Disciplinary Hearing Report and Record, Docket Entry No. 37-2, p. 3.

[39]Id.

[40]Plaintiff's Declaration, Docket Entry No. 39, pp. 1-2.

[41]TDCJ Disciplinary Hearing Report and Record, Docket Entry No. 37-2, p. 3.

offense report, standing alone, meets the "some evidence" standard); Stewart v. Thigpen, 730 F.2d 1002, 1005-06 (5th Cir. 1984) (review of prison disciplinary board's decision limited to whether that decision is supported by "some facts" or "any evidence at all"); Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981) ("No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by 'some facts' [or] 'whether any evidence all' supports the action taken by prison officials.")(citation omitted). As a result, Dillon has not shown that his disciplinary conviction was unsupported by the requisite evidence.

Although Dillon disputes Sergeant Little's version of the events, the Fifth Circuit has held that "a prisoner's claim that he was charged in a disciplinary report with acts he did not commit [does] not state a deprivation of due process [if] the disciplinary proceeding was otherwise fair and adequate." Spellmon v. Price, 100 F.3d 953, 1996 WL 625422, *3 (5th Cir. 1996) (unpublished) (citing Collins v. King, 43 F.2d 248, 253-54 (5th Cir 1984)); see also Jackson v. McKinney, 24 F.3d 238, 1994 WL 242860, *1 (5th Cir. 1994) (unpublished) ("There is no due process violation if a prisoner, who is falsely accused of charges, is given an adequate state procedural remedy to challenge the accusations."); McShan v. Fregia, 986 F.2d 1418, 1993 WL 58728, *3 (unpublished) ("An inmate's allegation of factual innocence is not actionable under

section 1983 if his disciplinary proceeding otherwise was fair and adequate."). Dillon, who had the opportunity to testify on his own behalf, does not allege facts or present evidence showing that the process afforded was inadequate or that his disciplinary proceeding was unfair.

Based on this record, Dillon has not established that he was punished in violation of the Due Process Clause or that his constitutional rights were violated in connection with the challenged disciplinary proceeding. Accordingly, Little is entitled to qualified immunity from the claims against him under the Due Process Clause.

Because Dillon has not raised a genuine issue of material fact for trial or established any valid claim for relief, Defendant's MSJ will be granted. Dillon's corresponding motions for summary judgment, for judgment as a matter of law, and for a default judgment will be denied.

### IV. Conclusion and Order

Accordingly, the court **ORDERS** as follows:

1. Defendant Christopher Little's Motion for Summary Judgment (Docket Entry No. 36) is **GRANTED** and this action will be dismissed with prejudice. A separate final judgment will issue.

2. Little's Motion for Leave to Amend his Brief in Support

(Docket Entry No. 55) is **DENIED as moot.**

3. All other pending motions filed by Plaintiff Kyle Dillon (Docket Entry Nos. 35, 42, 44, 47, 49, 52) are **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 14th day of May, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE